**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MAMIE L. LOVE, )<br>   Plaintiff, )<br> )<br>v. )<br> )<br>COMMUNITY NUTRITION NETWORK, )<br>   Defendant. ) | Case No. 09-CV-4937<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion for summary judgment [57] filed by Defendant Community Nutrition Network ("CNN") and a cross motion for summary judgment [62] filed by Plaintiff Mamie Love. For the following reasons, the Court grants CNN's motion [57] and denies Plaintiff's motion [62]. Judgment is entered in favor of CNN and against Plaintiff Mamie Love.

**I.     Background**

    **A.     Factual History**[1]

CNN is a nonprofit organization receiving its funds from the State of Illinois and private contributions. It runs 19 nutritional centers in the Chicago area and is affiliated with Meals On

---

[1] Local Rule 56.1 requires that statements of fact contain allegations of material fact and that the factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. at 583-85 (N.D. Ill. 2000). In this matter, Defendant filed a Local Rule 56.1(a) Statement of Material Facts. In addition, as certified in Defendant's Motion for Summary Judgment, Defendant served upon Plaintiff the required Local Rule 56.2 Notice to Pro Se Litigants Opposing Summary Judgment. In the instance case, Plaintiff did not file a Statement of Additional Undisputed Facts, choosing instead to rely on allegations in her complaint. However, an unverified complaint is not "proper evidentiary support." *Cf. Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996) (reversing summary judgment for defendant where plaintiff had relied on a verified complaint as evidentiary support; a verified complaint "converted the complaint * * * into an affidavit"). Because Plaintiff failed to file her own statement of facts, the Court takes the relevant facts from Defendant's Local Rule 56.1 Statement of Undisputed Material Facts. See *Brasic v. Heinemann's Bakeries, Inc., Inc.,* 121 F.3d 281, 284 (7th Cir. 1997); see also *Jupiter Aluminum Corp. v. Home Insurance Company,* 225 F.3d 868, 870-71 (7th Cir. 2000).

Wheels. At its centers, it prepares and serves lunch to senior citizens. Meals On Wheels delivers meals prepared in centers to seniors at their homes. CNN employs about 45 part-time and full-time employees and typically in a year will have approximately 600 volunteers at its Centers.

Plaintiff started volunteering at CNN's Rich Township Nutrition Center in approximately May of 2009, when she started coming in to have lunch with her mother who was, and apparently still is, a patron. As a volunteer, Plaintiff assisted in service of lunch to 30 or 40 elderly people. In early June, the center manager, Sandra O'Neill, offered Plaintiff employment as a food service assistant. Plaintiff accepted, and filled out an employment application on June 12. She also went through a background check (which delayed the start of her employment), visited CNN's corporate office to complete paperwork on June 29, and started work as an employee on or about July 1, 2009. She was paid for a total of 72 hours of employment at the rate of $8.00 an hour through her leaving employment on July 14, 2010. According to Defendant's statement of facts (and not contested by Plaintiff), CNN actually paid her for more hours than she worked.

For the first two weeks of her employment at CNN, until the July 14 incident described below, Ms. O'Neill was satisfied with Plaintiff's performance. She did not have any complaints with Plaintiff, and Plaintiff did not complaint to her about any issues or persons on the job.

1. *CNN's Rich Township Nutrition Center*

CNN's Nutrition Center is located within the Rich Township Senior Citizen Center. CNN serves lunch to the seniors who engage in various recreational activities at the Senior Center or who just come in for lunch. CNN employs two people at the Rich Township Center. Ms. O'Neill, a Caucasian, is the manager of the center, and she also employs one food service assistant. She has been a CNN Manager since 2002. Several volunteers assist CNN's two

employees with cooking, serving, and cleaning up from the lunches served five days per week. In addition, Ms. O'Neill's daughter, Patricia Ryan, is a floating manager employed by CNN. When CNN needs an employee to fill in at the Rich Township Center, Ms. Ryan often performs that function. The kitchen operation and the dining room at the center are immediately adjacent to each other in an open layout so that activities in one area are visible to persons in the other.

### 2. *The July 14 Incident*

On July 14, 2009, Ms. O'Neill was absent from work because of medical issues. Around midday, she received a telephone call from Sandi Fuhrman, the Rich Township Senior Center's Director. Ms. Fuhrman informed her that there had been an incident involving Ms. Love and the volunteers and that the seniors were very upset. Ms. Fuhrman told Ms. O'Neill that Ms. Love had very loudly, repeatedly, and forcefully told the volunteers, in front of all the volunteers and patrons: "When I get respect from you, you will get respect from me." She forbade the volunteers from getting near the oven or the refrigerator (which they had to do as part of their duties). Also, Ms. Fuhrman told Ms. O'Neill that the incident was so loud and disruptive that Rich Township's Senior Center employees had come out of their offices to see what was going on. Ms. Love admitted at her deposition that she had announced to the seniors words to the effect of "we are all adults here and we all need to respect one another," and that there had been some name calling. She also admitted that she might have told volunteers to "step back" from the oven where they were taking food out.

Ms. O'Neill then telephoned Ms. Love. According to Ms. Love, Carol O'Brien, Ms. O'Neill's boss, had phoned her, not Ms. O'Neill.[2] Regardless of who contacted Ms. Love, the message was more or less the same. According to Ms. O'Neill, she asked her what had

---

[2] Ms. O'Brien was Ms. O'Neill's boss until approximately February of 2009. Ms. O'Neill maintains that she never spoke to Ms. O'Brien about the incident and never asked her to talk to Ms. Love.

3

happened and she said "nothing." Ms. O'Neill told her to go home, and not come back to work until Ms. O'Neill returned so they could talk about it. According to Ms. Love, Ms. O'Brien told her that she had created a disturbance and that she should not come back to work until Ms. O'Neill returned.

When Ms. O'Neill returned on July 21, she telephoned Ms. Love at the telephone number on file, but the number had been disconnected. Ms. Love did not contact Ms. O'Neill again.[3] Plaintiff was replaced as food service assistant by another African-American woman.

### 3. Plaintiff's Tennessee EEOC Charge

On March 11, 2009, Ms. Love filed an EEOC Charge against Youth Villages, Memphis, Tennessee. However, Youth Villages is not in any way affiliated with CNN and neither Ms. O'Neill or Ann Cooper, CNN's President, had ever heard of it or of Ms. Love's Charge against it.

**B.     Procedural History**

On August 12, 2009, Plaintiff Mamie Love filed a complaint, along with an application for leave to proceed *in forma pauperis* and for appointment of counsel. The Court granted the application for leave to proceed *in forma pauperis* and denied her request for counsel without prejudice. CNN's prior counsel filed a motion to dismiss and an answer. On December 3, 2009, the Court struck the motion to dismiss without prejudice due to counsel's failure to follow several of the Rules of Civil Procedure.

Plaintiff's *pro se* complaint alleges that Defendant discriminated against her, beginning on or about June 29, 2009. It alleges further that CNN retaliated against Plaintiff because she

---

[3] Ms. Love's deposition testimony on her alleged termination was inconsistent. She first testified that Ms. O'Brien left a telephone message with her sister's boyfriend that she did not need to come back to work. Love Tr. 73. She also testified that Ms. O'Neill had called to tell her that CNN no longer needed her. Love Tr. 75.

4

"filed a Charge against the same company. But in another state. With the EEOC, under a different name." Compl. at ¶ 12(g)(h)).

Plaintiff attached to the complaint the EEOC Charge she filed against CNN. She alleged she began employment on around May 1, 2009, as a Kitchen Aide, was subjected to harassment on account of race and retaliation, and was terminated. Her EEOC Intake Questionnaire, also attached to the complaint, alleged that the discrimination was comprised of the following conduct: (1) Plaintiff receiving the same pay as a temporary person and being told to close her mouth about it; (2) failure to receive orientation; (3) that "Mary" called her a "stupid bitch"; (4) "Michael/deliver gentle man [sic]" told her to watch her back; (5) the manager's daughter kicked her in the foot on June 26, 2009, and also "suck" [sic] middle finger at her; (6) Plaintiff had asked "Verna" not to put hands in her hair while fixing bread; and (7) that a "lady" that "prepare" [sic] "silverware suck [sic] fork down in my arm." Also attached to her complaint was a charge that she filed on March 11, 2009, against Youth Villages, Memphis, Tennessee, alleging sex discrimination and retaliation occurring on March 9, 2009.

On January 13, 2010, CNN's present attorneys moved for and were granted leave to substitute for CNN's prior attorney. At that time, the case was referred to Magistrate Judge Nolan for a settlement conference and supervision of discovery. Judge Nolan twice attempted to appoint an attorney for Plaintiff for purposes of a settlement conference only. However, Plaintiff advised the Court she wished to represent herself at the conference. A settlement conference was held on June 22, 2010, but settlement was not reached. Subsequently, Plaintiff refused to appear at a noticed deposition, and Defendant filed a motion to compel. Plaintiff did not appear at the hearing on the motion, and the motion was granted. Plaintiff eventually appeared for her deposition, and discovery was completed.

On October 4, 2010, Defendant filed a motion for summary judgment, seeking judgment on Plaintiff's retaliation and discrimination claims. As previously stated, Defendant certified that it served upon Plaintiff the required Notice to Pro Se Litigants Opposing Summary Judgment. On November 4, 2010, Plaintiff filed her own motion for summary judgment. Because Plaintiff's motion for summary judgment arguably responds to certain aspects of Defendant's motion for summary judgment, the Court liberally construes her filing as both a cross motion for summary judgment as well as her response to Defendant's summary judgment motion. On November 16, Defendant filed its reply.

## II. Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The

non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

No heightened standard of summary judgment exists in employment discrimination cases, nor is there a separate rule of civil procedure governing summary judgment in employment cases. *Alexander v. Wisconsin Dept. of Health and Family Servs.*, 263 F.3d 673, 681 (7th Cir. 2001) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)). However, intent and credibility frequently are critical issues in employment cases that in many instances are genuinely contestable and not appropriate for a court to decide on summary judgment. See *id*. Nevertheless, summary judgment in favor of the defendant is hardly unknown or, for that matter, rare in employment discrimination cases. *Wallace*, 103 F.3d at 1396.

**II. Analysis**

    **A. Plaintiff's Title VII Retaliation Claim**

Under the anti-retaliation provision of Title VII, it is unlawful for an employer to "discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." *Brown*, 499 F.3d at 684 (quoting 42 U.S.C. § 2000e-3(a)). "A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method." *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 662 (7th Cir. 2006) (quotations and citations omitted). "Under the direct method, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse action

taken by the employer; and (3) there was a causal connection between the two." *Id.* at 663 (quotations and citations omitted).

Under the direct method, satisfaction of the causal connection leg of the test presupposes that a defendant had actual knowledge of the protected activity when the employment decisions were made. *Tomanovich*, 457 F.3d at 668 (citing *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004). Here, Defendant has presented uncontroverted evidence that CNN is a different company than Youth Villages, and that CNN had no knowledge whatsoever of Plaintiff's charge against Youth Villages. In turn, Plaintiff has provided only convoluted theories as to why the two companies must be related. When asked during her deposition for the basis for her assertion that there was a connection between the two, she asserted that Youth Villages and CNN were the same company because CNN attempted to settle this case, Carol O'Brien is no longer with CNN, Plaintiff's boss at Youth Villages told her that her boss lived out of town, Ms. O'Neill traveled out of town, and the name of the department she worked in at Youth Villages was "Nutritional Services." Plaintiff also claimed that she heard Ms. O'Neill say to somebody on the phone, two weeks before Ms. Love was allegedly terminated (which would have been at the same time she was initially employed), that if they don't get rid of a person they will be sued. Plaintiff also theorized that there was a connection between Youth Villages and CNN because her ex-husband, who was originally from Chicago, worked for Youth Villages. In addition, she thought there was a connection because her manager at Youth Villages had a felony charge on his record, and she had been told by CNN that its background check included an inquiry as to whether she had a felony charge on her record. Ms. Love also opined that the fact that her ex-husband's cousin worked for the EEOC in Memphis showed a connection. Finally, she circled back to assert that there must be a connection between the two organizations because similar things were said to her

at each company, and her pay was handled the same. See, *e.g.*, Love Tr. 14-28. These musings fall far short of establishing a causal connection between Plaintiff's EEOC charge and the end of her employment with CNN. Plaintiff has not demonstrated that Defendant had any *actual* knowledge of the filing of her EEOC charge against Youth Villages when she was asked to leave work on July 14, 2009, and thus fails to demonstrate a triable issue under the direct method of proving retaliation.

Alternatively, under the indirect approach, in order to establish a *prima facie* case for retaliation, the employee must show that (1) after filing a charge, the employee was subject to adverse employment action[4]; (2) at the time, the employee was performing his job satisfactorily; and (3) no similarly situated employees who did not file a charge were subjected to an adverse employment action. See *Hudson v. Chicago Transit Auth.,* 375 F.3d 552, 560 (7th Cir. 2004). "'If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to present evidence of a non-discriminatory reason for its employment action.'" *Tomanovich,* 457 F.3d at 663 (quoting *Adusumilli v. City of Chicago,* 164 F.3d 353, 362 (7th Cir. 1998)). Then, if the employer presents evidence of a non-discriminatory reason for its employment action, "'the burden shifts back to the plaintiff to demonstrate that the employer's reason is pre-textual.'" *Id.* (quoting *Moser v. Ind. Dep't of Corr.,* 406 F.3d 895, 903 (7th Cir. 2005)).

As in the direct method, the indirect method presupposes that the decision maker knew the plaintiff was engaged in the protected activity. *Tomanovich,* 457 F.3d at 668-69. Therefore, for that reason alone, Plaintiff's case fails under the indirect method.

However, even if Plaintiff could establish that CNN knew about her charge involving Youth Villages, she cannot establish the second and fourth legs of the indirect method.

---

[4] For the purposes of this motion only, CNN concedes that there is an issue of fact as to whether Plaintiff was terminated or whether she simply abandoned her job.

Defendant contends that Plaintiff did not meet CNN's legitimate expectations of workplace behavior. Ms. O'Brien received information, with which Plaintiff did not disagree in any substantial degree, that on a day when Ms. O'Neill was absent and Plaintiff was unsupervised, Plaintiff created a severe disturbance with the volunteers at lunch service in the presence of other senior patrons, told the volunteers to step back from the kitchen equipment (which they needed to utilize to do their volunteer jobs), and did it in such a loud and disturbing manner that Rich Township's Senior Center staff came out of their offices to observe it.[5]

Furthermore, as for other similarly situated individuals, Plaintiff has not pointed to any other employees who engaged in behavior similar to hers, let alone engaged in such behavior without being terminated. See, *e.g.*, *Tomanovich*, 457 F.3d at 667 (requiring evidence that another "had engaged in similar misconduct, or that he was fired by the same individual * * * *).

Moreover, even if Plaintiff could satisfy her *prima facie* burden on retaliation, Plaintiff could not satisfy her burden of showing that CNN's actions were a pretext for retaliation (or for that matter for racial discrimination). That is because pretext is a cover for illegal discrimination -- "a lie, specifically a phony reason for some action." *Equal Employment Commission v. Our Lady of the Resurrection Medical Center*, 77 F.3d 145, 149 (7th Cir. 1996). The measure of pretext is not whether the employer was mistaken in its judgment, but rather, whether the employer's explanation was an honest one. It is well settled that a court may not sit as a "super personnel" review board that second guesses an employer's facially legitimate business decisions." *Argyropoulos v. City of Alton*, 539 F.3d 724, 736, 737 (7th Cir. 2008).

Ms. O'Brien left Ms. Love unsupervised and shortly thereafter received a report from an employee of Rich Township that Ms. Love had engaged in conduct that had upset senior citizen

---

[5] During her deposition, Plaintiff admitted that no one at the Township had anything against her. See Love Tr. 91-92.

patrons of the Senior Center and of CNN's Nutrition Center. Whether the report was right or wrong is not material. The question instead is whether Plaintiff has produced any evidence that Ms. O'Neill's reliance on it was not honest and in good faith. Plaintiff has not presented any such evidence and therefore cannot satisfy her burden of demonstrating pretext.

### B. Plaintiff's Title VII Disparate Treatment Discrimination Claim

Plaintiff's form complaint also alleges that Defendant discriminated against her on the basis of her race in violation of Title VII of the Civil Rights Act.[6] Title VII prohibits discrimination in employment: "It shall be an unlawful employment practice for an employer * * * to discharge any individual because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As with retaliation, to prove a case of discrimination under Title VII, a plaintiff may show discrimination under either the "direct" or "indirect" methods of proof. *Atanus v. Perry*, 520 F.3d 662, 671-72 (7th Cir. 2008) (explaining the misleading nature of this nomenclature and reiterating that the direct method may be proven with either direct or circumstantial evidence and that the indirect method proceeds under the burden-shifting rubric set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973)); see also *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Under the direct method of proof, the plaintiff may introduce either direct or circumstantial evidence to create a triable issue as to whether the adverse employment action was motivated by a discriminatory intent. *Id.*; see also *Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir. 2005); *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). In other words, the plaintiff must show either "an acknowledgement of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination."

---

[6] On Plaintiff's form complaint, Plaintiff checked the box for "Race" discrimination. Because it is difficult to determine whether Plaintiff is proceeding under a disparate treatment theory or a hostile work environment theory, the Court will address Plaintiff's race discrimination claim under both theories.

*Dandy v. United Parcel Service, Inc.,* 388 F.3d 263, 272 (7th Cir. 2004) (citing *Gorence v. Eagle Foods Ctrs., Inc.,* 242 F.3d 759, 762 (7th Cir. 2001)).

Under the indirect method of proof initially set forth in *McDonnell Douglas Corp. v. Green*, a plaintiff first must establish a *prima facie* case of discrimination. 411 U.S. 792, 802-04 (1973). In order to establish a *prima facie* case of race, sex, and/or age discrimination, a plaintiff must establish that: (1) she was a member of a protected class; (2) she was qualified for the job or was otherwise meeting the defendant's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) the defendant treated similarly situated employees outside the protected class more favorably. See *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007).

If the plaintiff successfully establishes a *prima facie* case, a rebuttable inference of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. See *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997); see also *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007). Once the defendant provides a legitimate explanation, the burden then shifts back to the plaintiff to prove that the proffered justification is pretext. *Fane*, 480 F.3d at 538. The Seventh Circuit has counseled that where a plaintiff has not met his burden of showing that a defendant's explanations are merely a pretext for discrimination, it is not necessary for a court to decide whether the plaintiff also established a prima facie case. See *Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1391 (7th Cir. 1990); see also *Box v. A & P Tea Co.*, 772 F.2d 1372, 1378 (7th Cir. 1985) (moving directly to third step of *McDonnell Douglas* approach where defendant articulated and offered proof of a legitimate, nondiscriminatory reason for adverse employment action).

While Plaintiff's checked the box on the form complaint for "race" discrimination, the allegations in the complaint as well as her deposition testimony do not clearly indicate whether she is asserting that any adverse actions against her at CNN were due to her race. However, even if her complaint is construed to allege that any adverse actions were motivated by race, Plaintiff has failed to present any evidence that they actually were. The only reason that Plaintiff gave for why she believed race may have been a factor in CNN's alleged discriminatory conduct was that she "was the only black employee there * * *." Being the only black employee at a worksite does not establish racial discrimination, particularly when the worksite had only two employees.

Furthermore, CNN's position is strengthened by the "same actor" defense. When an employee is hired and fired by the same decision maker in a relatively short time span, a presumption of nondiscrimination arises. This is applicable in race cases (see *Our Lady of the Resurrection Medical Center*, 77 F.3d at 152 (plaintiff hired and fired in a span of 10 months)), as well as in other types of discrimination cases (see *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 399 (7th Cir. 1997) (plaintiff hired and fired by the same person in a span of two years)). The Seventh Circuit has theorized that a decision-maker does not suddenly become a bigot in a short period of time. Here, Sandra O'Neill decided to hire Ms. Love on or around June 12, 2009; to suspend her on July 14, 2009; and to terminate her (accepting Ms. Love's allegation for purposes of this Motion only) between July 14 and July 21, 2009. Plaintiff does not allege, and it would be hard for the Court to fathom, that Ms. O'Neill became motivated by race in one month's time.

### C. Plaintiff's Hostile Work Environment Claim

In order to establish a *prima facie* case of hostile racial work environment, a plaintiff must demonstrate that (1) she was subject to unwelcome harassment; (2) the harassment was

based on her race; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004). To satisfy her burden, a plaintiff must present evidence showing "a workplace permeated with discriminatory ridicule, intimidation, and insult." *Id.* at 714. Normally, such allegations of harassment are supported by facts that the Plaintiff is the target of racial slurs, epithets, or other overtly race-related behavior. *Id.* at 713.

The alleged conduct consists of one volunteer sticking a fork in her arm, a patron calling her a "stupid bitch," a part-time employee kicking her in the foot, someone flipping her off, and a truck driver for an unknown employer telling her to watch her back. As set forth below, because Plaintiff has failed to meet her burden by presenting evidence as to other elements of the *prima facie* case, the Court need not assess the severity and pervasiveness of the alleged conduct. However, the Court notes that Plaintiff did not consider the incidents severe enough to report them to anyone. Also, two or three of the incidents allegedly occurred before Plaintiff was offered employment, yet she accepted the job when it was offered.[7]

---

[7] It also is worth noting that the term "employee" is defined in Title VII—rather unhelpfully—as "an individual employed by an employer." 42 U.S.C. § 2000e(f). This circular definition has long frustrated federal courts, which since have attempted to give the term some more concrete meaning. See *Smith v. Castaways Family Diner,* 453 F.3d 971, 975-76 (7th Cir. 2006) (citations omitted). However, the Seventh Circuit has not yet addressed the issue of where to draw the line between a volunteer and a Title VII employee. But the circuits that have considered this issue uniformly have held that remuneration in exchange for services is an essential condition to the existence of an employer-employee relationship. See, *e.g., York v. Assoc. of Bar of City of N.Y.,* 286 F.3d 122, 126 (2d Cir. 2002) ("[W]here no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist."); *Daggit v. United Food & Commercial Workers In't Union, Local 304A,* 245 F.3d 981, 987 (8th Cir. 2001) ("Without compensation, no combination of other factors will suffice to establish the relationship."); *Llampallas v. Mini-Circuits, Lab, Inc.,* 163 F.3d 1236, 1244 (11th Cir. 1998) ("Congress did not intend Title VII to protect mere titles or labels; an individual who sues only to maintain a purely gratuitous working relationship does so without the protection of that statute.").

Prior to being hired as an employee, Plaintiff did not receive any salary or benefits, and thus her services at CNN likely would be classified as community service, not gainful employment. Failing to demonstrate

The Court need not reach the issue of whether the alleged harassment was so severe and pervasive as to alter conditions of employment and create a hostile environment. In the instant matter, the record is devoid of evidence that any actions taken by seniors or volunteers were based on Ms. Love's race. The few incidents that she cited did not involve race or statements about race. Plaintiff's basis seems only to be that since she was the only black employee at CNN's Rich Township Nutrition Center location (out of two employees), any statement made to her or actions taken must have been because of her race. As previously set forth, this allegation, without more, does not satisfy Plaintiff's burden to demonstrate that the harassment was based on her race. Furthermore, under *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), an employer is not responsible for the kind of non-management conduct alleged here unless the employee reports it and the employer does not take action. It is undisputed that Plaintiff never reported any of the allegedly offensive conduct.

---

that she received appreciable consideration in exchange for her services, Plaintiff, at the time that she volunteered, was not an employee under Title VII. See, *e.g.*, *Holder v. Town of Bristol*, 2009 WL 3004552, at *2-6 (N.D. Ind. 2009) (collecting cases and holding that reserve police officer's work for the town was "more akin to community service than gainful employment."). However, because she eventually became an employee of CNN, the question remains whether the alleged discriminatory conduct that occurred while she was a volunteer should be considered in assessing whether she was subjected to a hostile work environment. Because the resolution of this issue is not necessary to the Court's disposition of either Defendant's or Plaintiff's motion, the Court need not determine whether conduct that occurred while she was a volunteer should be considered in determining whether the conduct was so severe and pervasive as to be actionable.

## IV. Conclusion

For these reasons, Defendant's motion for summary judgment [57] is granted and Plaintiff's motion [62] is denied. Judgment is entered in favor of Defendant CNN and against Plaintiff Mamie Love on all claims.

Dated: December 16, 2010

_____
Robert M. Dow, Jr.
United States District Judge